UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 25-CR-10267-DJC |
| | ) | |
| GINO ROSARIO TYLER ALEXANDER | ) | |
| ALLEGRA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

On May 13, 2026, defendant Gino Rosario Tyler Alexander Allegra pleaded guilty to all of the counts in an eleven-count Superseding Indictment (Docket No. 40) charging him with theft of government money, in violation of 18 U.S.C. § 641 (Counts 1 through 4), bank fraud, in violation of 18 U.S.C. § 1344 (Counts 5 through 8), and concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 9 through 11).  Sentencing is scheduled for August 6, 2026.

In its Presentence Investigation Report ("PSR"), the Probation Office calculates Allegra to have an offense level of 17 and a Criminal History Category of I, with a resulting advisory Guidelines Sentencing Range of 24 to 30 months.

Consistent with its obligations in a plea agreement with Allegra and with the factors set forth at 18 U.S.C. § 3553(a), and for the reasons set forth below, the United States respectfully requests that the Court sentence Allegra to time served of approximately 8.5 months, plus two additional weeks for Allegra, his counsel, and the United States Probation Office to identify a release plan that will permit Allegra to go directly to an in-patient program that will address his substance use disorder, his housing status, and his mental health needs.

The Court should also order Allegra to serve a term of supervised release of three years; to pay the required $1,100 special assessment, and to pay restitution of $1,200.237.63, jointly and severally with other defendants charged in connection with Allegra's offense conduct as described in the PSR and below.  Because of this substantial restitution obligation, the United States does not seek a fine.

I.       The Offense

Between approximately November 2023 and June 2024, Allegra deposited stolen and altered United States Treasury checks that he received from CC-1.  (¶¶ 14-33).  After obtaining Allegra's driver's license, CC-1 used it to open a Massachusetts corporation in Allegra's name, World Advance, Inc. ("WAI").  (¶¶ 16-18).  Allegra then opened accounts at Sharon Credit Union ("SCU") and Hanscom Federal Credit Union ("HFCU"), claiming falsely at Sharon Credit Union that WAI was in the business of "professional, scientific, and technical services."  (¶¶ 19-20).  Over several months, at CC-1's direction and with CC-1's assistance—which included food, clothing, cash, hotel stays, showers, and transportation, so that Allegra could look the part of a business depositor—Allegra deposited four Treasury checks worth approximately $861,000 into the WAI accounts at SCU and HFCU.  These checks had been issued to legitimate taxpayers but stolen and altered to be payable to WAI.  (¶ 22).  During the same time period, again at CC-1's direction and with CC-1's help, Allegra deposited approximately $338,000 in cashier's checks payable to WAI.  (¶ 23).  Allegra did not know it, but these additional checks were the proceeds of other individuals' deposits of stolen Treasury checks into other corporate shell accounts.  (¶ 35).  After depositing these six checks into WAI accounts, Allegra withdrew as

much as $67,225 in cash and purchased various cashier's checks payable to other shell companies, and provided the cash and cashier's checks to CC-1. (¶¶ 34-36, 39-40).

CC-1 paid Allegra, who was homeless and struggling with substance use disorder throughout the offense, an indeterminate amount in cash, food, alcohol, drugs, housing, and Cash App payments. (¶¶ 37-38).

## II.    The Guidelines Sentencing Range

In a plea agreement, Allegra and the United States stipulated to a total offense level of 18. In its final pre-sentence investigation report ("PSR"), the Probation Office has calculated Allegra's total offense level at 17 with a Criminal History Category of I. The corresponding guidelines sentencing range ("GSR") based on the Probation Office's calculation is 24 to 30 months.

The discrepancy between the parties' calculation and the PSR stems from: (i) the parties' stipulation to a "zero-point" offender adjustment under U.S.S.G. § 4C1.1 that appears to be inapplicable because Allegra has a disqualifying prior criminal history; and (ii) the Probation Office's assessment that Allegra should receive a three-level downward role adjustment under U.S.S.G. § 3B1.2(a) & (b).

The United States does not object to the three-level downward adjustment. In the circumstances of this case, it is clear that Allegra was less culpable than others involved the Treasury check scheme, even though he participated repeatedly and inflicted significant damage to the victim financial institutions. He appears to have been targeted to participate based on his housing situation and his addiction, shared minimally in profits, and had little to no discretion in how the scheme unfolded.

### III.    The Requested Sentence

The United States asks that the Court impose a sentence of time served of approximately 8.5 months and supervised release for three years, but also that the Court impose two additional weeks of incarceration, to permit the Probation Office and Allegra to establish a release plan that will accommodate Allegra's need for both housing and treatment for his substance use disorder and mental health needs.  The United States submits that such a sentence would be consistent with the sentencing factors set forth at 18 U.S.C. § 3553(a).

*Seriousness of the Offense*

While it might be tempting to conclude that the theft or alteration of a Treasury check itself is the serious offense (and its architects the most serious offenders), these schemes do not work without individuals like Allegra.  By pretending to be a businessperson who would typically receive a six-figure check and by deceiving SCU and HFCU, Allegra helped the others turn the Treasury checks—which he could easily identify as government property—into cash and cashier's checks.  He did so repeatedly over months in bank branches around the Commonwealth.  The fraud he committed causes banks to increase their anti-money laundering procedures, which impacts both the victim banks' costs and the experiences of legitimate customers who need to identify themselves more rigorously every time they enter a bank.

In evaluating the seriousness of the offense, however, the Court should also consider that Allegra shared most of the proceeds from the stolen check with others. His cut of the fraudulent proceeds (as evidenced by his CashApp statements) was relatively small, and his overall knowledge of the scheme was limited.  Allegra's co-conspirators always intended for him to take the fall, and they accordingly sent him into branches to ensure that he was on the videos and

pictured in driver's licenses used to establish WAI accounts.  This is one of the main reasons the government has agreed to recommend a below-Guidelines sentence to the Court.

*General Deterrence*

Allegra's crime, however, is particularly suited to a generally deterrent sentence. Although depositing and laundering the stolen checks was not particularly profitable for him, Allegra committed crimes with an incredibly low barrier to entry. He did not need access to Treasury checks; specialized knowledge about the tax system; or equipment to alter the stolen checks.  He simply had to walk into a bank and pretend to be a businessperson when he was not. Given the number of Treasury check thefts the government has been called upon to prosecute in recent years,[1] the requested sentence of imprisonment for this defendant will put the public on notice of a fairly common-sense proposition: if you make up a business to deposit and withdraw funds from a bank, you will go to prison.

*Individual Deterrence*

Allegra did not have a significant criminal history before committing this office.  When he is released, however, Allegra will likely face many of the same pressures to reoffend, including a lack of consistent access to housing and a decade-long dual diagnosis of substance use disorder and mental health issues.  The Court's sentence will hopefully cause Allegra to think carefully before accepting an invitation to earn cash illegally.

---

[1] In addition to this case, see *United States v. Jackson*, No. 24-cr-10213-DJC; *United States v. Tenryk*, No. 24-cr-01227-DJC; *United States v. Amarpreet Singh*, No. 25-CR-10322-DJC; *United States v. Gurprit Singh*, No. 25-CR10325-DJC; *United States v. Domingo Villari*, No. 25-CR-10337-DJC; *United States v. Smith Matthews*, No. 25-CR-10372; *United States v. Opara*, No. 25-CR-10377-DJC; *United States v. Banks*, No. 25-CR-10395-DJC; *United States v. El-Ghoul*, No. 25-CR-40028-DJC; *United States v. Ruel*, No. 26-CR-10139-ADB; *United States v. Steven Ware*, No. 24-CR-10304-WGY; *United States v. Vasquez*, No. 26-CR-40019-MG.

*Avoiding Sentencing Disparities*

The government is comfortable recommending an approximately 8.5 month sentence based on other similar sentences the Court has pronounced in two related Treasury check matters. The defendants in those cases were Eric Banks (25-CR-10395-DJC) and Nnamdi Opara (25-CR-10377).

The Court sentenced Banks, age 70, to 14 months' custody for the deposit of stolen checks totaling more than $2 million. Banks' GSR, which included a minor role adjustment, was 27 to 33 months. Notably, Banks reoffended just before sentencing after opening an account in a victim's name and attempting to deposit a Treasury check into that account.

The Court sentenced Opara to 10 months' custody for the deposit of two stolen U.S. Treasury checks totaling $700,767. Opara's GSR was 27 to 33 months.

The effective sentence here, of less than 9 months, is consistent with the Court's sentences of Banks and Opara. Any sentence that was significantly longer would risk punishing him disproportionately, especially considering Allegra's struggles that led him into this offense.

The requested sentence is also in line with other defendants sentenced nationally for money laundering who had GSRs of 24 to 30 months. The average sentence of 15 months (¶ 136) is higher than what the parties request here, but others of the § 3553(a) factors more than address the reason for that disparity.

*Allegra's History and Characteristics*

Finally, as both parties have noted, CC-1 preyed on Allegra's addiction and basic needs for food and shelter to involve him in this offense. The cash payments Allegra received from CC-1, sometimes as low as $20 or $30 at a time, point strongly to CC-1 and others manipulating

6

Allegra's most basic human needs.

Other circumstances described in the PSR (¶¶ 76 and 82) make clear that Allegra experienced significant childhood traumas.  In and of themselves, Allegra's experiences and struggles do not excuse his conduct, but they do provide important context that the Court should consider in imposing sentence.  By the letters submitted on his behalf, it appears that Allegra has significant familial support—a reasonably strong predictor against recidivism for many defendants.

<u>CONCLUSION</u>

For all of these reasons, the United States respectfully requests that the Court sentence Gino Allegra to a time served sentence of 8.5 months' imprisonment, plus two weeks to ensure a release plan consistent with Allegra's needs while on supervised release.  The Court should order him to serve 3 years on supervised release (with conditions that include mental health testing and treatment as directed by the Probation Office), and a $1,100 special assessment. The Court should also order the defendant to pay restitution as set forth below:

$1,200.237.63, consisting of payments to the following victims in the following amounts:

Sharon Credit Union ($206,499.70), jointly and severally with any convicted co-conspirators or defendants in *United States v. Eric Banks*, 25-cr-10395.

Beacon Bank (formerly Berkshire Bank) ($223,591), jointly and severally with any convicted co-conspirators or defendants in *United States v. Jesse El-Ghoul*, 25-CR-40028-DJC; and

Needham Bank ($115,000), jointly and severally with any convicted co-conspirators or defendants in *United States v. Domingo Villari*, 25-CR-10337-DJC.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney


By: /s/Seth B. Kosto
SETH B. KOSTO
Assistant United States Attorney

August 4, 2026

CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2026, I provided a copy of the foregoing to the attorney for the defendant through the Court's Electronic Case Filing system.

/s/Seth B. Kosto
SETH B. KOSTO
Assistant United States Attorney

August 4, 2026

8